[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The issues in this case arise out of the occupancy by the defendants, Elmer and Judith Kiessling, of a commercial building (property) in Southbury, Connecticut, owned by the plaintiff, Newtown Savings Bank, during said occupancy.
The occupancy commenced in December of 1992 under the terms of a lease and option to buy executed by the aforesaid parties and included a provision that the cost of improvements made by the defendants would be credited to the sale price if defendants purchased the property. Said lease and option buy expired on October 31, 1993, and the defendants continued to occupy said CT Page 5996 premises as month-to-month tenants.
On January 15, 1993, the defendants executed a promissory note for the principal sum of $25,000, the proceeds of which were used to make improvements on the property. The balance of said note, by its terms, was payable on January 22, 1994. The parties orally agreed to an indefinite extension of the due date of the balance of the note during continued negotiations by the parties for the purchase of the property by the defendants. Between January and June of 1993, defendants spent $31,777.42 for improvements on the property. In the fall of 1994, the parties started to negotiate for a contract of sale for the property. After a number of exchanges of letters and documents by their counsel, a contract of sale, dated March 1, 1995, was fully executed by the plaintiff by its Assistant Vice-President, Thomas D. Wells, it having previously been signed by the defendants on February 14, 1995, but not initialed as to changes made between that date and March 1, 1995. Under the terms of paragraph 11 of the March 1, 1995 contract, if the defendant buyers defaulted or failed to comply with any term of the contract, the plaintiff seller could hold and retain all sums of money paid as liquidated damages: "Excepting sums paid by the Buyer for improvement of the subject premises, which sums would be credited back to the Buyer in the event that this contract is terminated, such sums not to exceed $32,000.00 less the then outstanding amount of the loan from the Seller for such improvements which is currently $23,826.73."
The defendants did not purchase the property and continued to occupy the same until they left in January, 1996 as a result of eviction proceedings. It is the plaintiff's claim that as a result of defendants' failure to purchase the property that the defendants' forfeited any claim for reimbursement of the sums paid for improvements to the property and in addition that they owe the full balance of the note sued upon plus interest, costs and attorney's fees.
The defendants claim in their counterclaim and special defense that the March, 1995 contract is binding on the parties and as a result of the language quoted above, the present principal balance of the note in the amount of $23,517.06 has been paid in full and the balance of the cost of improvements noted above, or $8,260.36 has been payable to them since March 31, 1995 plus legal interest from that date. CT Page 5997
To resolve the claims of the parties, it is necessary to determine whether the March, 1995 contract is a valid one.
The defendants in paragraph 6 of their counterclaim allege: "In or about March of 1995, Kiessling and the Bank entered into a written contract for purchase of the Property, (which contract is hereinafter referred to as the `Contract')." The plaintiff's answer to counterclaim states: "6. Admits." In addition, paragraph 8 of said counterclaim states: "The Contract provided that in the event the contingencies could not be satisfied such that Kiessling could not proceed with the purchase from the Bank, then all sums paid by Kiessling for improvements to the Property would be credited back to Kiessling up to a maximum sum of $32,000.00, which sum would be paid by forgiveness of the note that is the subject of the complaint, which at the time of the Contract had an outstanding balance of about $24,000.00, with the balance up to a maximum of $32,00.00 to be credited directly to Kiessling." To this paragraph the plaintiff answered: "8. Deny that portion of the paragraph alleging . . . which sum would be paid by forgiveness of the note that is the subject of the complaint, which at the time of the contract had an outstanding balance of $24,000.00," not indicating how it responds to the remaining portions of paragraph 8, whether admitting or leaving the defendants to their proof, but consistent with their answer to paragraph No. 6, not denying paragraph 8 in its entirety.
The court finds that the plaintiff's admission that the parties entered into a written contract to be a judicial admission conclusive on the plaintiff and therefore a matter not in issue.
As a result of that finding, the rights of the parties are controlled by the provisions of the contract.
The plaintiff has filed a post-trial motion to amend its answer to paragraph 6 of the counterclaim. To allow such an amendment would not be appropriate since the parties tried this case on the pleadings as they were filed. The defendants, based on the plaintiff admitting paragraph 6 of the counterclaim, had the right to rely on the 1995 contract as being a valid one and could present their defense to the complaint and their proof of their counterclaim by relying on said contract as being a valid one. For the foregoing reasons, the motion to amend is denied.
The plaintiff also claims that its general denial to CT Page 5998 defendants' special defense was sufficient to place the existence of said contract to be in issue. The court is not persuaded that the broad language of the general denial was sufficiently specific to raise a question as to the accuracy of the plaintiff's admitting the specific admission to the allegation contained in said paragraph 6.
There was no evidence presented of any written notice being given by the defendants as provided in the contingency paragraphs numbered 12 of the contract and 3 of the addendum to contract. By the language of those paragraphs without written notice either "this contract remains in full force and effect as if this paragraph did not appear in this contract" or this contingency paragraph shall be null and void and of no further force and effect." Thus, the language of paragraph 11 is the controlling language related to the credit for improvements to the property.
By the terms of paragraph 11, including the language added thereto and appearing at the bottom of page 4 of the contract, the defendants are due on their counterclaim the sum of $8,260.36. The defendants seek legal interest on said sum but the court denies same since the fact pattern of this case created sufficient confusion to justify the plaintiff to dispute the claims of the defendants. For the same reason, the third count of the defendants' counterclaim is without merit.
The second count of said counterclaim is moot.
For the foregoing reasons, judgment may enter in favor of the defendants on the complaint, the note having been paid in full on March 31, 1995, and in favor of the defendants and against the plaintiff on the first count of tne defendants' counterclaim in the sum of $8,260.36 plus costs, and in favor of the plaintiff on the second and third counts of the counterclaim.
Stodolink, J.